BAUGHMAN v. GRAND TRUNK WESTERN RAILROAD CO.

1. WORKMEN'S COMPENSATION—EVIDENCE OF COMPENSABLE INJURY.
Evidence that employee suffered a compensable injury during the course of his employment and was totally disabled from resuming his former occupation as switchman *held,* sufficient, on review of award by department of labor and industry.

2. COMMERCE—INJURY TO SWITCHMAN—INTERSTATE COMMERCE.
If switchman received injury while freight car was being purposely selected from storage tracks for predetermined purpose

of taking it to factory, there to be loaded and sent to Canada, injury would be compensable under Federal employers' liability act, the injury so inflicted being incident to interstate commerce (45 USCA, §§ 51-59).

3. SAME—INJURY TO SWITCHMAN—INTRASTATE COMMERCE.

Switchman's injury received while freight car was being uncoupled on main track in order to place car on storage track where it was to remain until needed *held*, compensable under State workmen's compensation act since accident occurred incident to intrastate commerce (2 Comp. Laws 1929, § 8407 *et seq.*).

4. WORKMEN'S COMPENSATION—SWITCHMAN—JURISDICTION—FINDING OF FACT.

In switchman's proceeding to recover compensation for injury he received while in employ of railroad company, where Supreme Court is unable to say department's finding that accident occurred incident to intrastate, not interstate, commerce is against the preponderance of the evidence, no determination is made as to whether findings as to jurisdictional facts are excepted from general rule that findings of fact by the department are conclusive (2 Comp. Laws 1929, § 8451).

5. SAME—RELEASES NOT BINDING.

Releases of employer from liability under both State and Federal statutes not filed with department of labor and industry nor in conformity with the workmen's compensation act *held*, not binding on employee in his proceeding to recover workmen's compensation under State act (45 USCA, §§ 51-59; 2 Comp. Laws 1929, § 8407 *et seq.*).

Appeal from Department of Labor and Industry. Submitted January 10, 1935. (Docket No. 54, Calendar No. 38,063.) Decided April 8, 1935.

Chester H. Baughman presented his claim for compensation against the Grand Trunk Western Railroad Company for accidental injury received while in defendant's employ. Award to plaintiff. Defendant appeals. Affirmed.

*William C. Brown,* for plaintiff.

*H. V. Spike* and *William W. Macpherson,* for defendant.

BUTZEL, J.   Plaintiff was awarded compensation at the rate of $14 a week by the department of labor and industry, on review of an award by the deputy commissioner denying compensation.  In discussing the case we limit ourselves solely to questions raised by appellant in its denial of liability and in the statement of questions involved in its brief.  The principal question is whether plaintiff at the time of his injury was engaged in intrastate commerce and is therefore entitled to recover under the compensation act of this State (2 Comp. Laws 1929, § 8407 *et seq.*), or whether he was engaged in interstate commerce and is accordingly limited to proceedings under the Federal employers' liability act (45 USCA, §§ 51–59).  Plaintiff was employed by defendant as a switchman.  He belonged to a crew of five, which included an engineer and fireman who ran the engine, and a conductor who gave directions, all engaged in the switching of cars on defendant's tracks in Lansing, Michigan.  At the place where it is alleged the accident occurred, there is a main track and also two side tracks used for the purpose of storing a large number of empty freight cars. Plaintiff's hours of work were from 9 a. m. to 5 p. m. According to his testimony, on September 23, 1926, at 3:45 or 4 p. m., he was disconnecting an empty box car, the only car then attached to the engine on the main track, for the purpose of placing it on the storage tracks, there to remain until needed.  He signaled the engineer, and while attempting to get on the engine so as to release the car and shunt it back to the storage tracks, his foot slipped and was caught in the loose gravel alongside the track.  In attempting to extricate his foot he twisted and

wrenched the knee so badly as to put it out of joint. He nevertheless completed the movement of releasing the car, which rolled up onto the storage track, and he then got off the engine and closed and locked the switch. Plaintiff alleges that this was the only car he had anything to do with at the time of the accident; that the storage track at that time was already half full of empty cars awaiting consignment. He continued to work until quitting time, although he had but little to do the balance of the afternoon. He failed to mention the accident to the conductor, or to other members of the crew, but reported it to the yardmaster the following day.

Notwithstanding considerable question as to whether plaintiff actually suffered the injury claimed, there is sufficient testimony, by which we are bound on certiorari, showing that plaintiff did suffer a compensable injury at the time claimed, was confined to his bed for a considerable period, and is totally disabled from resuming his former occupation as switchman.

The important question is whether plaintiff was engaged in interstate commerce at the time of the alleged injury. It is defendant's contention that the injury occurred during the last operation of the day, in which Northern Pacific car 5006 was being moved from the storage track for the purpose of spotting it at the Reo plant, where it was to be loaded with automobiles consigned to Winnipeg, Manitoba; that the car in question was the last of a string of 18 cars standing on the storage track, which were brought onto the main line, where plaintiff uncoupled the Northern Pacific car 5006; that plaintiff's injury occurred while he was stepping on the engine in order to uncouple it from the remaining 17 cars, which were to be returned to the storage track; and that after the engine had been uncoupled,

the Northern Pacific car was shoved down to the Reo plant, where it was loaded with automobiles and shipped two days later to Winnipeg, Manitoba. If Northern Pacific car 5006 was purposely selected and brought from the storage tracks for the predetermined purpose of taking it to the Reo plant, there to be loaded and sent to Winnipeg, Manitoba, then the moment it left the storage track to begin its scheduled journey to Winnipeg, it began a movement in interstate commerce; and if plaintiff was injured while assisting in this particular movement, his remedy would lie under the Federal employers' liability act (45 USCA, § 51 *et seq.*). The movement of the car would be the first step in its transportation to its ultimate destination outside the State. *Louisville & Nashville R. Co.* v. *Parker,* 242 U. S. 13 (37 Sup. Ct. 4); *Philadelphia & Reading R. Co.* v. *Hancock,* 253 U. S. 284 (40 Sup. Ct. 512); *Rogers* v. *Railway Co.,* 246 Mich. 399.

On the other hand, if it be true, as claimed by plaintiff, that the injury occurred in an entirely different movement, while he was uncoupling a single empty box car from an engine on the main track, in order to place the car on the storage track, where it was to remain until needed, then plaintiff was not engaged in interstate commerce at the time of his injury, and he would be entitled to recover under the State compensation act.

It therefore becomes necessary to determine in which particular movement plaintiff was engaged at the time of his injury. Although defendant presented a great deal of testimony to the effect that the last operation of the day was the switching out of Northern Pacific car 5006, as described above, and that this car was consigned to Winnipeg, defendant produced no competent evidence to show that plaintiff was engaged in that particular move-

ment at the time of his injury. The testimony which defendant did offer on this latter question was largely hearsay and incompetent. Bruce Snyder, conductor of the switching crew and in charge of the operation in which defendant claims the alleged accident occurred, stated that the particular movement being made at the time plaintiff claims to have been injured was the switching out of Northern Pacific car 5006, consigned to Winnipeg; that this was the last operation of the day. Snyder admitted, however, that he did not know about plaintiff's injury until he heard about it the following day, and that his information came from the yardmaster. James Wilson, claim agent of defendant company, was also called, but his testimony was incompetent almost in its entirety. It was based exclusively on an investigation of the accident, made by him some four months after it occurred, the results of which he had incorporated in a written report. This report, introduced in evidence, describes the last operation which took place on the day when plaintiff claims to have been injured, and states that the injury occurred during this movement according to the story alleged to have been related on the following day by plaintiff to the yardmaster, from whom Wilson obtained the information. Wilson could not tell of his own knowledge whether plaintiff's injury occurred during this last operation of the day, or earlier as plaintiff had testified, but admitted that his information on this particular question was obtained from the yardmaster and the yard foreman. The testimony shows that the yardmaster, William Reed, was in Battle Creek at the time of the hearing, but he was not called as a witness.

We need not decide upon whom the burden rested to prove that the operation plaintiff was engaged in when injured was in intrastate and not interstate

commerce. Plaintiff sustained the burden and, as the department held, gave the only competent testimony in the case showing that the accident occurred in intrastate commerce. His testimony was positive and to the point, though somewhat weakened by the following cross-examination:

"*Q.* When you went in to make this switching movement on this day, you went in to the west yard, didn't you?

"*A.* Yes, sir.

"*Q.* There was a string of from 10 to 18 cars on this passing track?

"*A.* Probably more.

"*Q.* The car that you wanted to get at was the last car in that string, wasn't it?

"*A.* I don't know.

"*Q.* Don't you remember that you coupled your engine with this string of cars and then brought the whole bunch of cars on to the main track?

"*A.* Yes.

"*Q.* And then uncoupled the last car from the engine and sent it down the track?

"*A.* Yes.

"*Q.* And the remaining cars, you put back into the passing track?

"*Plaintiff counsel:* I object. Do you mean at the time he was injured?

"*Defendant counsel:* At the time he was injured, yes.

"*Q.* Then, after this one car was sent down and the others put back on the passing track, your engine went down and coupled on to this single car?

"*The witness:* No, we took out more than one car.

"*Q.* And that was the last work you did that day?

"*A.* I don't know where we went from there.

"*Q.* Immediately after you were injured, don't you know that they stopped working?

"*A.* I do not.

"*Q.* Did you continue to work for the rest of that day?

"*A.* I did not do very much. I was on the foot-board all the time.

"*Q.* And you hooked on to one car and put it out into the Reo plant?

"*A.* I don't know.

"*Q.* You would not swear to that?

"*A.* No.

"*Q.* Is there a switching list that goes with these movements?

"*A.* Sometimes.

"*Q.* Do you know whether there was in this case?

"*A.* I don't know.

"*Q.* If there was, you did not have it?

"*A.* No, sir.

"*Q.* Do you know that this car that was being taken out of this line of cars and put into the Reo track was then assigned and loaded to be sent to Winnipeg, Manitoba?

"*A.* I didn't know anything about it."

While the cross-examination in a degree corroborates defendant's theory of the case, it is confusing and does not directly contradict plaintiff's main testimony.

Defendant claims that this court is not bound by findings of the department on controverted facts which would determine the question of jurisdiction; and that we should therefore review the testimony *de novo.* It is unnecessary to discuss the question whether the particular determination of fact here involved is excepted from the general rule that findings of fact by the department are conclusive* where there is any evidence to support them, inas-

---

* See 2 Comp. Laws 1929, § 8451.—Reporter.

much as we cannot say that the finding of the commission is against the great weight of the evidence. In view of plaintiff's positive showing that the accident occurred between 3:45 and 4 p. m., while he was placing a single car on the storage track, there to remain until needed, and defendant's failure to present any competent testimony as to the exact time when plaintiff was injured, we are not satisfied that the findings of fact by the commission are against the preponderance of the evidence.

Inasmuch as defendant has given as its sole reason for appeal the claim that plaintiff was engaged in interstate commerce, and its questions and statements of facts revolve about this point, we shall not discuss many of the other questions referred to.

Defendant introduced in evidence two releases signed by plaintiff on November 10, 1926, and April 5, 1927, in which plaintiff in consideration of payments by defendant of $100.67 and $327.67, respectively, absolutely discharged defendant from all liability both under State and Federal statutes, and from all further claims. The releases thus given by plaintiff could not affect his right to recover under the State compensation act. They were never filed with or approved by the department, and do not conform with the act, and they are consequently not binding upon plaintiff. *Harrington* v. *Department of Labor & Industry,* 252 Mich. 87.

The award is affirmed, with costs to plaintiff.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.